We'll call the next case please. 3-11-0-0-4-5 Kankakee County Board of Review Appellant by Kenneth Flory v. Illinois Property Tax Appeal Board Appellees by Ann Escalera. Mr. Flory. Good afternoon. May it please the court, my name is Ken Flory and I am the attorney representing the appellant, the Kankakee County Board of Review. Just a little bit of factual background for you. We're talking about a property tax appeal board case involving a facility located in Kankakee County. This is a facility owned by Armstrong World Industries. They have 35 acres and on this 35 acres they have a 400,000 square foot facility. It involves manufacturing and warehousing. The tax year at issue is 2006 and that's important to remember. In our economic world it's before things went south. So as of January 1st, 2006 is the date of valuation for this property. That's at issue in this case. Briefly the numbers, the board of review, after they held their hearing, heard their evidence, considered all the argument, assessed the property at a market value of $8.6 million. Armstrong filed a PTAB appeal and they were looking for a market value assessment of $3.2 million. Ultimately the property tax appeal board heard the case and they came out with a market value of $4 million. So there's a big range of numbers and there's some significant money at issue in this case. The assessment process, or real property really quickly, relies on three approaches, cost approach, income approach, and sales comparison approach. All of us agree for this property the sales comparison approach is the appropriate method of valuing the property. Our experts, which are hired by both of the parties, are required to come up with comparable sales that are arm's length market value transactions that are increased or decreased depending on a variety of factors. In this case we did have the appraisers who presented their testimony, and this is important, in a summary fashion. The appraisals that come before every board review in PTAB are summary appraisals. What that means is not every single fact and piece of data that is in the experts' minds or files is contained in the report. That's accepted by the Appraisal Institute, which is the national organization. That's very critical because what was included in the testimony at PTAB and what was not is the central focus of this case. The standard of review, that's going to be critical. It's going to be how this case goes up or down on behalf of the board of review. The standard of review for this case is de novo because we are not looking at which comparable is better than the other that relies on the discretion of the Property Tax Appeal Board. This case is about errors in the evaluation methodology that PTAB used. What do I mean? I mean that the mistakes they made don't just apply to our case. The mistakes that made would apply and be at play in every single appeal of commercial property that comes before them. That's why we're at the de novo level, question of law rather than question of fact. Well, it seems to me that Armstrong's appraisers appraised single occupant, more like manufacturing facilities, things like that. Your appraisers used multi-tenant type facilities. Exactly, two issues, lease properties and multi-tenant properties. It's kind of similar because if they're leased, obviously they have tenants as well. They have one or two tenants. The Armstrong company owned and used the property. Not your typical scenario for these industrial types of property, but that's what they did. And you're right, the issue is why were the comparables that the board of review's appraiser used rejected by PTAB? And as I'm going to explain, they were rejected on evaluation methodology errors. Well, isn't it? Which one's the best or the most appropriate? Isn't that a question of fact? If that were the analysis that was used, you would be exactly right, but that's not. And as I can explain, we're going to get into some fundamental common law concepts on what goes on in the hearing, what evidence is to be considered, and what happens with expert testimony. When I finish talking about that, it will be abundantly clear that we are talking about issues of law that go to the heart of evaluation methodology, not just the PTAB's right to say this property was a little bit similar or dissimilar, and so I'm going to reject it or accept it. It's not that, because PTAB clearly spelled out in their decision why we're rejecting the board of review's appraisal comps that were leased and that had multi-tenants. Did they reject them and say we're not going to consider them, or did they say the other ones are better? When you look at what ultimately they said, we can't treat those at the value that the appraiser set them at, so it appears that they're trying to weigh the benefits, the pros and cons of this comp. But when you look at the language they used, they said, here's what the expert didn't do. First of all, black letter law. Experts testify without being required to provide a foundation. That's black letter law of the Illinois Supreme Court. We've cited half a dozen cases for that principle. Unlike a lay witness, who must provide a foundation before they come to an opinion, and unless that foundation is there and it must be provided up front, the opinion is not accepted as evidence. Experts, on the other hand, they give conclusions. They're not required in their direct testimony to spell out all the bases for the conclusion, every fact, every connection. The conclusions. The Board of Review's appraiser said, I've reviewed these properties. I've actually appraised one of these properties. I've examined the legal records. I've looked at the leases, and he gave the conclusion. These properties do not require an adjustment because of the leases. The Appraisal Institute, the Bible of appraisal techniques that's cited in multiple appellate court cases as the expert treaties on appraising, states that whether a property has leases or not, it could be treated as a fee simple if the leases are at a market rate and no adjustment is required. If the rent on the leases is low, then you have to make a lower adjustment. If it's high, you make a higher adjustment. So you have to make an adjustment depending on the leases. Now, our appraiser concluded and testified that no adjustment is required. That's essentially the end of his testimony on the subject. During cross-examination, there was absolutely no questioning about the basis behind the conclusion that no adjustment was required for the leases. The hearing officer, who was very active in this questioning of this case, did not ask a single question about whether or not the leases were at market value, above, below. They did not question the conclusion of the expert that no adjustment, upward or downward, was required. However, the decision comes out. The hearing officer in PTAB ultimately says, we're rejecting the lease comps because he didn't provide the background about, were these at market rate, below market rate, above market rate. That's contrary to the black-letter law of expert testimony. It's the duty of the opposing counsel to bring out the foundation weaknesses, if any exist, to question those, and that did not occur. There's absolutely no evidence in the record, other than the Board of Reviews appraiser saying that the assessment does not need, the evaluation of this comp does not have to be changed because of the leases. So under the Real Estate Institute text, that's an acceptable comparison. No upward or lower adjustment. For PTAB now to come in and say, we're going to reject them because you didn't give us the foundation for that opinion, is against the black-letter law. There's no impeachment testimony at all about these leases. For PTAB to say there should have been a downward adjustment, requires creation of facts that aren't in the record. You can only adjust a lease property downward if the rents are below market value, which there's absolutely no testimony. So how can PTAB reject these lease property comps on the basis that there's no evidence in the record to support this? And that goes to evaluation methodology. PTAB has to understand. Experts testify in conclusions. That's acceptable. That's our law. If someone wants to destroy that conclusion and get to the foundation, that's the duty of the cross-examination. Without it, that stand is unimpeached. But what rule of law requires PTAB to accept your evaluations over Armstrong? You have to look at why they rejected our evaluations. They rejected our evaluation for an impermissible reason. They rejected them because of the lack of foundation for the expert's opinion. That's wrong. That relies on evidence not in the record. That's black-letter law wrong. Rejecting an expert testimony because he didn't provide the basis, the detailed facts behind the conclusion. That's black-letter law wrong. If those were correctly, if that error is corrected, those comps, five of the six comps on the Board of Review side, use all these properties. And let's talk about the multi-tenant issue. PTAB also said, listen, Armstrong's using their property for themselves. All five of the six comps that the Board of Review looked at are for multi-tenants. You can't do that. Wrong. Again, what appraisers have to do is say, we have to determine the theoretical market value of this property, what a willing buyer and a willing seller would do in an arm's-length transaction to purchase this property. That's the imagination that's required to value a property. This happens every day. Okay, let's talk about it. So you've got a leased property. Now, if I'm buying that property because I want income property, that leased property might have more value to me, right? But if I want to buy that property because I got some hot item and I want to start manufacturing it tomorrow and that property is subject to a six-month, one-year, whatever lease, it's got less value to me because I can't start manufacturing tomorrow because I got those leases. Not necessarily. It all hinges on were the rents above, at, or below market value. That's a critical factor because you could be buying a property where people are paying out the nose for this property. They're paying astronomical rents. As an investor, I'm going to buy that property, and I'm going to pay more because I've got long-term leases that have high rents, or the contrary. But what if I'm not an investor? What if I'm a manufacturer? If a manufacturer is going to buy a property, and this is subject to leases, he's going to buy a different property because he can't use it. He's not going to buy a property. If he needs a property in six months, and this has leases that go off for 10 years, they're either going to pay more and pay less and somehow breach the leases and pay the damages to the lessees, or they're going to delay their installation of their facilities. But all of those facts are really brilliant discussions if they're in the record. The only thing you have in the record is the expert conclusion that no adjustment is required based on his analysis of the tenants, the leases, and the properties. That's all the record. The only thing PTAB can do with that comp is say, this is a good comp because no adjustment based on the leases alone, up or down is required based on the expert testimony. So we've got to accept it. So PTAB had to accept it. PTAB has to. So now five of the six comps are back into play in the multi-tenant issue. It's an objective analysis of the property. Not subjectively, what is this owner doing? You could have an owner who says, I'm going to use it for my kid's band of practicing because they're loud and it's a big warehouse. I know it could be used for a lot of good things, but that's a great place to put my kids. So now it's a less valid, because we're using a multi-million dollar warehouse for a kid's band practice, it's now less expensive. And because that's subjectively, that owner uses the property for that purpose, not objectively that somebody's going to come in and buy it as a warehouse because it has 13-foot ceilings and it's got big bays for trucks and it's got easy access and ingress to the roadways. It's subjective. It's an objective analysis. So to reject the multi-tenant comps because this owner just didn't happen to use their property in that manner is black letter law wrong. So under your interpretation, every 50,000 square foot commercial building in Kankakee County is worth the same thing? Absolutely not. We're just talking about rejections for two reasons. The lease and the multi-tenant. Okay. The one was a factory and warehouse, and the other one's multi-tenant. Just because they're the same size, they're the same? Hardly. The analysis in the record is excruciatingly detailed. They don't just generally say, this building's the same color, it's the same general size, it has a similar use, it's the same. Not the case. The analysis is in-depth. These are members of the appraisal institute. These are experts who have been doing this, what we do, on the appraisal side for their whole lives. How so? You have two minutes. So PTAB, hypothetically, they're supposed to be experts. We're not property appraisers. We're not asking you to do that, but you're experts in the law. And PTAB cannot consider evidence not in the record. They cannot reject expert testimony for failure to provide foundation on direct. And that's what they did. That's what your expertise is in, to say that's not the law in Illinois for agencies. Administrative agencies make incredible decisions every day of the year that affect the property rights and the interests of the rest of the citizenry. And they can do some things and not do some things. Can they reject expert testimony because they don't agree with it? It doesn't make sense to them? If it's unimpeached, if the opinions and the data relied upon on the expert, and I'm not just telling you this in case I tell you this, the PTAB has to accept that. Just like a judge sitting in a trial can't say, boy, I personally know that McDonald's is three blocks away, but no other attorney in the courtroom has brought that fact out. I can't consider that. I can't consider that. It's not evidence in the record, and it's not just common knowledge that where McDonald's is located. So PTAB uses their expertise to analyze the evidence as presented. Our adversarial system is whoever presents the evidence that we analyze. You may have great attorneys who present all the evidence in excruciating detail and not-so-great attorneys who don't. PTAB has to take the evidence they're given. That's only fair... Well, they were given evidence by Armstrong. What was wrong with that? What was wrong with the evidence? Well, they were, first of all... They had to come close to one or the other. Well, don't get the burdens of proof mixed up, because that's what they do. The property owner has the burden of proving that the assessment is wrong, and then the burden shifts to the Board of Review to justify its assessment. So even if Armstrong comes up with some interesting comparables, who cares if they're a couple hundred miles away, the Board of Review says. I'm sorry, the PTAB says. We're not going to look at local properties. We'll go hundreds of miles away. Then the Board of Review comes up, and they present six comparables. Five of the six are really at issue. The other one was a 2000 property, too old. So five of the six are... If they're thrown out of court because they were leased, and because they had multi-tenants, what do you have left? You have nothing left but Armstrong's comparables. Of course the decision is going to be in favor of Armstrong. But you can't reject those comps. Let's just suppose that none of them were rejected. You've got Armstrong's, and you've got yours. Now, what legal principle tells me which way the PTAB's got to go on how they're going to evaluate that property? If the rules are fairly applied, and all the comps are analyzed, then they have discretion to analyze one comparable versus the other, because that's where their expertise comes in. This comp is a little farther away. I don't care if it's not close to highway access. It's a good or a bad comp. That's their expertise. But that line stops when it comes to rejecting expert testimony against black-letter law, or rejecting property from a subjective analysis of what the property owner is using it for compared to objectively what you have to view the property, the best possible use of the property. Comps are your choice. Thank you. Thank you. Ms. Mascaleras. Good afternoon, and may it please the Court, Assistant Attorney General Ann Mascaleras for Respondent, Illinois Property Tax Appeal Board. In its decision, PTAB did not announce a blanket rule or a quote, valuation method prohibiting the use of sales of leased multi-tenant properties as comparables when valuing a subject property, which is a non-leased owner-occupied property. PTAB did not make a determination, as the Board of Review contends, that such comparables as a matter of law are incorrect. Rather, in finding the fair market value of Armstrong's property, which as of the assessment date was and had always been owner-occupied, non-leased, single-tenant property, PTAB found that Salisbury's comparables, all non-leased sales were, quote, more indicative of Armstrong's market value, end quote, under the sales comparison approach than Borson's comparables, sales of leased multi-tenant properties. And that finding is rooted in the evidence before it. Whereas here, both parties attempted to demonstrate the property's fair market value through evidence of appraisals using sales of arguably comparable properties via the sales comparison approach, the issue on appeal involves a difference of opinion as to the fair market value of the property, not whether an improper valuation method was employed. Let me just ask, at any time did PTAB ever say, we reject the county's, or the appraisals, and we're not going to consider them at all? No, they didn't. It's what I just quoted. What PTAB said was, they found Salisbury, who was the appraiser for the property owner Armstrong, his comparables were more indicative of Armstrong's market value than the Board of Review's expert appraisers' comparables. They didn't reject them. They said it was more indicative of the market value. It was the Board of Review's burden to set forth reasons and evidence supporting its theory as to why its leased multi-tenant comparables, different in those two main respects from Armstrong's property, were so similar to Armstrong's property as to be the best indicator of its fair market value. It had to support its theory that the sales of the leased properties required no adjustments because the leases were at market rates, so they equated to a fee-simple sale of a non-leased property, as was Armstrong's property. The law on this is clear. The proponent of comparables must establish their similarity to the subject property by presenting evidence regarding specific circumstances surrounding and relevant to their sales, and PTAB considers similarities and dissimilarities of alleged comparables vis-a-vis the subject property as well as the circumstances surrounding those sales of the comparables in estimating fair market value of the subject property. PTAB correctly discounted the comparables of the Board of Review's expert when it noted that Brosen provided, quote, no specifics as to the lease terms, length of lease, or any other details by which it could analyze the sales which involved ongoing leases. The point is this. The Board of Review needed to set forth some evidence on Brosen's direct or some other evidence explaining reasons to support its theory as to why the five leased properties were comparable to Armstrong's non-leased properties. For example, why the leases didn't impact the sales price of those comparable properties, therefore not... He says that's your burden, or at least Armstrong's. Well, PTAB is the neutral. It's the decision maker, so PTAB had no burden. Armstrong, the Board of Review contends everything's on Armstrong to cross-examine, which is what... I just believe that's what he said. Yeah, right. Either one way or another. Right. I think the point here is that there can't be a burden to cross-examine on something that was never developed during direct examination. If the Board of Review's expert was going on the theory by submitting comparables that were leased unlike the subject property, then it had the underlying... It had to support its theory and give reasons and explanations regarding why the leased nature of those comparables so different from the subject property did not matter or did not affect the sale price, and that's why they should be used as comparables to the subject property. I think if Rorson had said these leases were at market rates, it didn't affect the sale prices of the property, then perhaps Armstrong would have had to have cross-examined Rorson on how did you determine what the lease terms were, what the lease rates were, how to determine what the sale price was and how it was or wasn't affected by the leases. When Salisbury testified, did he testify at all about leased values? His comparables did not include any leased properties. What Salisbury said in answer to your question was he did not and would not use comparables that were leased at the time of sale in valuing Armstrong's property, a non-leased feasible property because such properties reflect a leased fee sale where the purchaser buys an encumbered property with an established income stream. So at that point, had Armstrong met its burden with regard to the value or lack of value of leases? Did at some point the burden shift to the Board of Review? The burden on Armstrong was to show that the assessment was excessive in relation to fair market value and Armstrong did that by presenting its expert testimony with valuation of properties and they chose to submit non-leased single-tenant properties similar to its own property.  that leases, why they didn't consider properties with leases? Yes, Salisbury made that statement. Correct. So then, does it then become the responsibility of the Board of Review to explain why leases shouldn't make a difference in terms of the comparables? If they're using all comparables, which is what happened here, five of the six comparables have leases and they're using that to measure or to establish fair market value of a non-leased property, then what PTAB said by stating that Broson provided no specifics as to lease terms, length of lease, or other details by which it can analyze the sales of the ongoing leases, yes, they have to put some forward, some rationale for their theory as to why these leased comparables were, I'll call it, comparable enough to the subject property. They chose to go that route. So they needed to substantiate their theory as to why those comparables were comparable enough to the subject property or similar enough. Let me persuade you, PTAB, why these comparables are comparable enough to the subject property. The Board of Review claims that the PTAB imposed upon it some sudden and unexpected requirement that it articulate these reasons to support its theory regarding why these properties were similar enough to Armstrong's properties. The Board of Review says it's well-established law that if leases are at market rates, it doesn't affect the sale price of a property, that if the lease favors a landlord, it increases the sale price of the property, and if the lease favors a tenant, it decreases the sale price of the property. Everybody knows this. If everybody knows this, then an explanation as to those factors should have been presented to the PTAB to explain the theory, to support the theory regarding why the lease nature of the comparables, though different from Armstrong's property, did not matter, did not affect the sale price of the comparables, and should be compared to Armstrong's property. Now, in the absence of any testimony by Rosen or other affirmative evidence by the Board of Review, that the leases in his comparables were at market rates, so their sale prices weren't affected and didn't require adjustments, and thus were akin to fee simple sales, PTAB properly found, based on the evidence before it, that Rosen should have, quote, made an adjustment for these sales, which were leased, and possibly even a downward adjustment for comparable sales four and five. PTAB's finding that the leases must have impacted the sale prices of Borson's comparables was rooted in the evidence, including what I mentioned before, Salisbury stating he would not use comparables that were leased at the time of sale because the person, the purchaser at that point, is buying a leased fee sale where the purchaser buys an encumbered property with an established income stream, perhaps, as he stated in one of his comparables, purchased as an investment. Buchanek, who was one of the Board of Review's experts, stated, if you're doing a fee simple appraisal, you want to do fee simple comparable sales, and Borson's definition of fee simple was absolute ownership unencumbered by any other interest. Also, there was a large price differential between Borson's leased comparables and Salisbury's non-leased comparables. PTAB could reasonably find that the ongoing leases which provided an established income stream resulted in higher sales prices of those properties when compared to Armstrong's non-leased, and that should be adjusted downward. Now, with regard to the multi-tenant nature of the properties, PTAB's finding that those multi-tenant comparables were dissimilar to Armstrong's owner-occupied single-user property is not against the manifest weight of the evidence. We don't value the subject property on some potential future speculative use, but its current use. It was no error that PTAB found Armstrong was a single-user configuration, whereas of the assessment date and all times prior to it, Armstrong alone owned and occupied the property for its business. It was never a multi-tenant property. The Board of Review claims that, quote, in its reply brief, that PTAB is not charged with valuing the property as its current owner uses it, but what a buyer might pay for a potential use at some point in the future. That's not correct. Bloomington and Ellsworth cases provide the property to be valued for the purpose for which it was constructed and not for any other purpose for which it might be used. PTAB need not speculate as to some future use of the property. Worsen's multi-tenant comparables with a fixed income stream was dissimilar to the actual use of Armstrong's property on the assessment date. The Court has no further questions.  affirm the final administrative decision of the Property Tax Appeal Board. Thank you. Thank you. Mr. Flores and the Board of Review are adjourned. Mr. Butler. Both appraisers testified that this property with this configuration would be most commonly used by multi-tenants. Leased properties. Just get that off the table. So, the objective view of the use of this property not what it's constructed for. Everyone agrees it's constructed for industrial uses but the use that the owner uses it themselves or leases it out is irrelevant. It's objectively what would a property of this type go at for a market sale. If we sold this, put this on the market tomorrow, what would the buyer pay for it? Wouldn't it? I mean, really, that's all kind of metaphysical, isn't it? I mean, it depends on what the buyer wants to do with it. Like I said, if he wants to manufacture it tomorrow, he doesn't want a leased property. And so, PTAB is assigned to put some objective value on something that we all know is not objective. Real estate's basically unique. It is unique but they have to perform the exercise as of January 1st, 2006, what would a willing seller and willing buyer pay for it? That's the job of PTAB or the Board of Review that occurs every day. This is not a difference of opinion between values as counsel suggested. It's pretty clear. Either expert testimony does not have to require a foundation as stated clearly in People v. Williams, Fig Pen, Aguilar v. Mount Sinai, Tumway v. Palmer, Anderson v. Mercy. It's black letter law that experts may testify. I guess I'm troubled by the whose responsibility it was to bring the reasonableness of the leases into evidence. You're saying it was Armstrong's on cross examination. You don't know if that's an issue. If they're not going to choose a cross exam, the point is they're conceding the point. The leases had no impact on this. The testimony from Armstrong's expert was that these leases are really bad. I chose properties without leases. But the real estate Bible says lease property can be equal to a fee simple owner use property if the rates are at market rate. If they're above or below, you need an adjustment. The Board of Review experts said no adjustment is required. I've examined the leases. I've examined the property. No adjustment is required. There's no other evidence. All of the potential reasoning that PTAB could have used to reject our sales is simply not based on evidence. Go ahead. I'm sorry. But Orson did testify to that at the hearing. He testified that no adjustment is required based on the leases. And his report is clear on that as well to support that. That's the conclusion. Correct. That no adjustment is required based on the leases. I've examined the leases and no adjustment is required. Correct. Well, wait a minute. But Armstrong's expert said, hey, don't listen to him. That's balderdash. We use the single tenant type or single owner-occupied thing and this is better than that and it's more reliable. That's what their expert said, right? He said, I wouldn't even use those lease properties.  well, there are two different appraisals and two different expert views about what's the most comparable property and PTAB resolved that issue.  didn't resolve it the way you wanted them to. They did resolve it based on factors of the comps. They resolved it as a blanket. We're not going to look at lease properties. You've given us lease properties. They had expert testimony for not doing that. Armstrong said it's nonsense to look at lease properties. He said this property would be leased with almost every other buyer. I think you're expanding on the testimony more than he testified to. It was not a discussion about these leases. The board review had two experts. The main expert and the second expert was a critique expert of Salisbury appraisal. Didn't he agree with everything that Salisbury had done except with regard to an upward or downward adjustment relative to  property. First of all, they cherry-picked the language relating to these properties. His testimony did not say he wouldn't use counts that were leased. He did not agree with the methodology. Just the opposite. He severely criticized the methodology. Unfortunately, you've got to go to the nuts and bolts. The  testimony is advocacy. That's all it is. It's not based on the actual testimony. When you look at the  testimony, he criticized Salisbury's approach severely. He got into the weighting that you're discussing as PTEB's job. The topic of PTEB is the real estate appraisal institute tax. Leased properties are proper costs. If we cut out leased properties, you're going to have to go through the process. Nobody cut out leased properties. I think these are more than  real estate appraisal institute.  PTEB liked Armstrong's expert opinions better. Isn't that the bottom line? Not because they told you. They were very clear why they didn't like the experts. He didn't provide a sufficient answer.  we have two or three comps, we lose. It's an outright rejection of the board of review comps. They threw them out. There's only one comp that was relied on in this decision. The board of review  did not provide a sufficient   board of review comps did not provide a sufficient answer. The board of review comps did not provide a sufficient board of review comps.  board of review does  provide a sufficient board of review comps. The board of review does not provide a sufficient board of review comps.